No. 26-1321

# In the United States Court of Appeals for the First Circuit

---

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES
LOCAL 2305; AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES NATIONAL VA COUNCIL,

*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS;
DOUGLAS COLLINS, in the official capacity as U.S. Secretary of
Veterans Affairs,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Rhode Island
Case No. 1:25-cv-00583-MRD-PAS
Hon. Melissa R. DuBose, Judge

---

**PLAINTIFFS-APPELLEES' RESPONSE TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR STAY
PENDING APPEAL AND ADMINISTRATIVE STAY**

---

KEKER, VAN NEST & PETERS
LLP
BROOK DOOLEY
TRAVIS SILVA
JILON LI
ALEXANDRA WHEELER
ELIZABETH HECKMANN
633 Battery Street
San Francisco, California 94111
Telephone: 415 391 5400
Facsimile:  415 397 7188

ZIMMER, CITRON & CLARKE
LLP
DAVID ZIMMER
EDWINA CLARKE
130 Bishop Allen Drive
Cambridge, Massachusetts 02139
Telephone: 617-676-9421

Counsel for Plaintiffs-Appellees

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT ........................................................................... 3

    A.   NVAC and Local 2305 ...................................................... 3

    B.   Executive Order 14251 and the Termination ................................ 4

    C.   Litigation challenging the EO .......................................... 5

    D.   The preliminary injunction in this case ......................... 7

    E.   The district court's post-injunction orders ..................... 9

III.   ARGUMENT ......................................................................... 11

    A.   Defendants are unlikely to succeed on the merits of their appeal from the injunction ................................................... 11

       1.   Defendants' "fundamental contradiction" argument is waived and meritless ..................................... 12

       2.   Defendants' cursory First Amendment and APA arguments do not demonstrate a likelihood of success. ..................... 16

    B.   Defendants are unlikely to succeed on the merits of their appeal from the enforcement order. ....................................... 17

i

1. The enforcement order is not appealable. ................................18

2. Defendants' specific performance arguments were waived and are otherwise not likely to succeed...................................................20

3. The Re-Termination is not properly before this Court.............23

C. Defendants fail to demonstrate irreparable harm. ......................25

D. Defendants fail to carry their burden on the remaining equitable factors.................................................................................................27

IV. CONCLUSION...........................................................................28

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ....30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFGE v. Noem,*
2026 WL 113599 (W.D. Wash. Jan. 15, 2026)...............................24, 26

*Am. Fed'n of Gov't Emps. v. Trump,*
167 F.4th 1247 (9th Cir. 2026) .........................................................6, 16

*Am. Fed'n of Gov't Emps. v. Trump,*
792 F. Supp. 3d 985 (N.D. Cal. 2025) .................................................6

*Am. Foreign Serv. Ass'n v. Trump,*
2025 WL 1742853 (D.C. Cir. June 20, 2025)..................................6, 26

*American Public Health Association v. National Institutes of
Health,*
145 F.4th 39 (1st Cir. 2025)...............................................2, 20, 21, 22

*Biden v. Texas,*
597 U.S. 785 (2022) ........................................................................23, 24

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of
Health & Hum. Servs.,*
137 F.4th 932 (9th Cir. 2025) ............................................................27

*Coggeshall Dev. Corp. v. Diamond,*
884 F.2d 1 (1st Cir. 1989) ............................................................21, 22

*Commonwealth of Puerto Rico v. United States,*
490 F.3d 50 (1st Cir. 2007) ...............................................................22

*Fed. Educ. Ass'n v. Trump,*
2025 WL 2738626 (D.C. Cir. Sept. 25, 2025)...........................6, 25, 26

*Freedom Holdings, Inc. v. Spitzer,*
408 F.3d 112 (2d Cir. 2005) ..............................................................26

6107536

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*
445 U.S. 375 (1980) ...............................................................23

*Miguel v. Dep't of Army,*
727 F.2d 1081 (Fed. Cir. 1984) .........................................14

*Morales Feliciano v. Rullan,*
303 F.3d 1 (1st Cir. 2002) ..........................................18, 20

*Nat'l Treasury Emps. Union v. Trump,*
2025 WL 1441563 (D.C. Cir. May 16, 2025)...................6, 26

*Nat'l Treasury Emps. Union v. Trump,*
780 F. Supp. 3d 237 (D.D.C. 2025)....................................4

*New York v. Trump,*
--- F.4th ---, 2026 WL 734941 (1st Cir. Mar. 16, 2026) .................18, 20

*New York v. Trump,*
133 F.4th 51 (1st Cir. 2025)....................................11, 16, 24

*Nken v. Holder,*
556 U.S. 418 (2009) .........................................1, 3, 11, 25

*Rhode Island State Council of Churches v. Rollins,*
158 F.4th 304 (1st Cir. 2025).............................................22

*Rhode Island v. Trump,*
155 F.4th 35 (1st Cir. 2025)................................................1

*S.E.C. v. Chenery Corp.,*
322 U.S. 194 (1947) ..........................................................25

*Sparkle Hill, Inc. v. Interstate Mat Corp.,*
788 F.3d 25 (1st Cir. 2015) ...............................................12

*State v. United States Dep't of Hous. and Urb. Dev.,*
--- F.4th ---, 2026 WL 887242 (1st Cir. Apr. 1, 2026)...................11, 23

*Thunder Basin v. Reich,*
510 U.S. 200 (1994) .........................................................7, 8

iv

**Statutes**

5 U.S.C. § 301 ................................................................................... 14

5 U.S.C. § 705 ................................................................................... 22

5 U.S.C. § 7103 .................................................................................. 4, 7

38 U.S.C. § 513 ................................................................................. 14

6107536

## I.  INTRODUCTION

Defendants fall "far short" of the demanding standard for a stay pending appeal.  A33.

Defendants fail to make a "strong showing" that they are likely to succeed on the merits of their appeal from the injunction.[1] *Nken v. Holder*, 556 U.S. 418, 434 (2009).[2] Defendants' primary argument is that, because the EO withdrew the VA from coverage under FSLMRS, they cannot comply with the Master CBA.  Defendants, however, never presented this argument to the district court, and "a disappointed litigant cannot surface an objection to a preliminary injunction for the first time in an appellate venue." *Rhode Island v. Trump*, 155 F.4th 35,

---

[1] Herein, "NVAC" refers to plaintiff AFGE National VA Council, and "AFGE" refers to the American Federation of Government Employees, AFL-CIO, an affiliate of plaintiffs. The term "injunction" refers to the March 13 preliminary injunction, A1, and "enforcement order" refers to the March 27 order enforcing the preliminary injunction, A31. "EO" refers to Executive Order 14251.  "Master CBA" includes "any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA," A29. "Termination" refers to Secretary Collins's August 6 termination of the Master CBA. "Re-Termination" refers to Secretary Collins's March 26, 2026 termination of the Master CBA.  Citations to "SA__" refer to Plaintiffs' Supplemental Appendix.

[2] Unless otherwise stated, internal quotation marks, citations, and alterations have been omitted, and all emphases added.

46 (1st Cir. 2025). For this reason alone, Defendants' "fundamental contradiction" argument cannot support the request for a stay. The argument also fails because it is simply not true. Defendants left the Master CBA in effect for months after the President issued the EO. Further, because of the enforcement order, Defendants are currently putting the Master CBA back into effect. Thus, Defendants' premise that the Master CBA is "inoperable" and "can[not] exist outside the FSLMRS," Mot. 11, 14, is contradicted by their own conduct.

Nor have Defendants made a "strong showing" that this Court is likely to reverse the enforcement order. The enforcement order is unappealable, which is independently sufficient to reject Defendants' arguments as to that order. But even if the enforcement order were properly before this Court, the district court had the authority to compel Defendants to comply with the injunction. *American Public Health Association v. National Institutes of Health* ("*APHA*"), 145 F.4th 39, 56 (1st Cir. 2025), forecloses Defendants' jurisdictional arguments about the Tucker Act and specific performance.

Defendants also do not show how they will be irreparably harmed by complying with the Master CBA during the pendency of this appeal.

6107536

Defendants ask for deference to the national security determination in the EO, but Defendants never explain how complying with the Master CBA impacts national security.  Defendants fall back on the cost of complying with the CBA, but Defendants cannot claim that following a contract that they negotiated and signed constitutes a harm.  Moreover, courts have held that the government is not harmed by funding obligations that the government has imposed on itself.

Finally, any harm to Defendants is greatly outweighed by Plaintiffs' harms if Defendants are allowed to terminate the Master CBA again.  As the district court detailed, and Defendants do not dispute, the Termination caused a substantial loss of union membership and deprived employees of critical benefits, including parental leave and union representation in disciplinary proceedings.

Defendants have not satisfied *Nken* and their motion should be denied.

## II.   STATEMENT

### A.   NVAC and Local 2305

NVAC, an affiliate of AFGE, represents over 300,000 VA employees.  AFGE and NVAC have collectively bargained with the VA

3

since the 1980s.  The current Master CBA went into effect in August 2023.  Local 2305 is a local union affiliate based in Rhode Island representing more than 450 VA employees.

NVAC and AFGE have a long history of opposing President Trump.  The district court found (and Defendants do not contest) that they are "vocal opponents of Trump Administration policies" and that this advocacy is "protected by the First Amendment."  A12–13.

**B.  Executive Order 14251 and the Termination**

On March 27, 2025, President Trump issued Executive Order 14251, *Exclusions From Federal Labor-Management Relations Programs* ("EO").  Exec. Order 14251, 90 Fed. Reg. 14553.  In the EO, the President made "determinations" under 5 U.S.C. § 7103(b)(1) that removed "collective bargaining rights from approximately two-thirds of the federal workforce," *Nat'l Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237, 245 (D.D.C. 2025), including virtually the entire VA.  The EO, however, did not require affected agencies to terminate their CBAs, nor did it mention CBAs.

6107536

It was not until August 6, 2025, more than four months after the President issued the EO, that the VA terminated the Master CBA.[3] Between March 27 and August 6, the VA continued to recognize AFGE as the exclusive representative of the over 300,000 VA employees whom AFGE is certified to represent, but after the Termination, the VA recognized AFGE as the exclusive representative only for police officers, security guards, and firefighters, who had been exempted from the EO.[4] SA594–95. Defendants also continued to observe Master CBA provisions between March 27 and August 6. SA603–04. The Secretary justified the Termination as being "pursuant to" the EO but otherwise provided no reasoning for the Termination. SA371.

## C. Litigation challenging the EO

Several unions including AFGE sued in the Northern District of California to enjoin the EO across the federal government. That court preliminarily enjoined the EO on June 24, 2025, ruling that the

---

[3] The EO was enjoined for about two weeks of this four-month period.

[4] Section 2 of the EO exempts "the immediate, local employing offices of any agency police officers, security guards, or firefighters" from the EO's force. Plaintiffs contend that Defendants have misapplied this exemption, *see* A21, but the parties agree that, at a minimum, AFGE continues to represent police officers, security guards, and firefighters.

5

plaintiffs were likely to succeed on their First Amendment claim that the President issued the EO in retaliation for protected speech. *Am. Fed'n of Gov't Emps. v. Trump*, 792 F. Supp. 3d 985, 990 (N.D. Cal. 2025). The Ninth Circuit stayed the preliminary injunction on July 7, 2025, and later reversed the injunction and remanded for trial. *Am. Fed'n of Gov't Emps. v. Trump*, 167 F.4th 1247, 1259 (9th Cir. 2026).

Other unions sued in the District of Columbia to enjoin the EO. The cases were related, and the district court issued four preliminary injunctions. SA020. The government appealed all four orders and moved to stay the first three of the orders pending appeal. The D.C. Circuit granted two of the stay requests[5] but denied the third because the government failed to "explain why the specific order from which it seeks relief imposes certain, great, and imminent injury while the appeal is pending." *Fed. Educ. Ass'n v. Trump ("FEA")*, 2025 WL 2738626, at *3 (D.C. Cir. Sept. 25, 2025). The first three appeals are under submission, while the fourth appeal is in abeyance.

---

[5] *Am. Foreign Serv. Ass'n v. Trump ("AFSA")*, 2025 WL 1742853, at *1 (D.C. Cir. June 20, 2025); *Nat'l Treasury Emps. Union ("NTEU") v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025).

6

## D. The preliminary injunction in this case

Plaintiffs brought this case seeking to enjoin the Termination.[6] Plaintiffs asserted a First Amendment claim, alleging that the Secretary ordered the Termination in retaliation for protected speech, and an APA claim, alleging, *inter alia*, that the Termination was arbitrary and capricious because it lacked a reasonable explanation; was inconsistent with 5 U.S.C. § 7103; and was inconsistent with the plain text of the EO. Plaintiffs moved for a preliminary injunction reinstating the CBA pending litigation.

In opposing the injunction motion, Defendants argued primarily that, under *Thunder Basin v. Reich*, 510 U.S. 200 (1994), the proper "channel" for Plaintiffs to litigate their claims is in the Federal Labor Relations Authority ("FLRA"). Defendants also argued that reinstatement of the Master CBA would harm the VA because, if Defendants were "forced to comply with Plaintiffs' requested injunction by reinstating the CBA, the VA would have to … reestablish[]

---

[6] AFGE challenges the validity of the EO in the Northern District of California litigation. This case is about the validity of the Termination notwithstanding the validity of the EO.

withholding of union dues; return[] approximately 1,961 employee union representatives to their previous taxpayer funded union time; … reengag[e] in collective bargaining … reissue[e] over 180,000 square feet of government office space … and otherwise revert[] back to the same practices" that were in place before the Termination.  SA582–83. Defendants took the same position at the injunction hearing, arguing, for example, that "if the CBA is reinstated," the government "will have to give back 180,000 square feet of office space …, allow employees to engage in union activity during the workday, … reengage in arbitrations, … [and] put back in those performance improvement plans." SA646–47, 652.

Applying the *Winter* test, the district court granted a preliminary injunction.  A2.  In its March 13, 2026 Memorandum and Order, the district court rejected Defendants' *Thunder Basin* "channeling" argument.  A10–A11.  It ruled that Plaintiffs are likely to prove that the Secretary had ordered the Termination to retaliate against NVAC and that Plaintiffs are likely to prevail on their APA claim.  A18, A24.  And it accepted Plaintiffs' evidence of irreparable harm and determined that

8

the remaining factors supported granting an injunction, A26–28.

Consequently, the district court ordered that:

> The Defendants shall reinstate the Master CBA—as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the Master CBA—for the remainder of the agreed-upon term provided in the Master CBA.

A29.

### E.    The district court's post-injunction orders

On March 20, Defendants filed a motion asking the district court to "clarify" that the injunction "does not enjoin re-termination of the Master CBA for other reasons." SA665. The district court responded with a minute order stating that the injunction order could not be "read to order that … the Defendants are wholesale prohibited from terminating the Master CBA again" and that "all parties covered by this contract will continue to be covered by this contract until it is terminated or amended in a lawful manner." SA691.

Also on March 20, Plaintiffs filed a motion to enforce the injunction. SA673. Plaintiffs documented that in the week following the injunction, Defendants had failed to comply with the terms of the Master CBA and had only issued a one-sentence statement that the

Master CBA was "reinstated." SA681. In response, Defendants argued that the injunction only required them to state that the Master CBA was "reinstated" but did not require them to actually do anything to comply with the CBA's requirements. SA694. The district court set the matter for a March 27 hearing.

On the evening of March 26, without notice to Plaintiffs and without seeking the district court's approval, Defendants "re-terminated" the Master CBA effective immediately. SA703.

After the March 27 hearing, the district court granted the motion to enforce, which, in relevant part, ordered that "reinstatement of and compliance with the Master CBA … shall be in both form *and* substance." A32.[7] Later that day, Defendants filed a notice of appeal.

On April 2, Defendants issued guidance informing VA employees that the Master CBA is "applicable and binding" and the "VA will follow the terms of all collective bargaining agreements for all employees covered" by them. SA756, 758.

---

[7] The district court also ordered Defendants to show cause why the Re-Termination was not a violation of the injunction and "in contempt" of court. A32. The district court later vacated that portion of its order pending this appeal. SA706.

6107536

## III. ARGUMENT

A stay pending appeal "intru[des] into the ordinary processes of administration and judicial review," and relief is not granted as "a matter of right." *New York v. Trump* ("*New York I*"), 133 F.4th 51, 65 (1st Cir. 2025) (citing *Nken*, 556 U.S. at 427). Defendants "bear the burden of demonstrating" that they satisfy the four-factor test to obtain this "extraordinary remedy." *State v. United States Dep't of Hous. and Urb. Dev.*, --- F.4th ---, 2026 WL 887242, at *8 (1st Cir. Apr. 1, 2026). The government must "(1) make a strong showing that it is likely to succeed on the merits of its appeal and also show that (2) it will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest lies with it, not the plaintiffs." *Id.* (citing *Nken*, 556 U.S. at 434). Defendants fail to meet this demanding standard.

### A. Defendants are unlikely to succeed on the merits of their appeal from the injunction.

In the district court, Defendants' lead argument in opposing an injunction was that Plaintiffs were required to bring this case before the FLRA rather than the district court. *See* SA551–54. Defendants have now abandoned that argument and instead argue that they cannot

6107536

comply with the Master CBA while the EO is in effect. Defendants'

argument is forfeited, contradicted by Defendants' own conduct, and

meritless.

### 1. Defendants' "fundamental contradiction" argument is waived and meritless.

Defendants waived their "fundamental contradiction" argument

by failing to raise it below as a merits argument in opposition to the

motion for an injunction. *See Sparkle Hill, Inc. v. Interstate Mat Corp.*,

788 F.3d 25, 29 (1st Cir. 2015). At no point did Defendants argue that

the Master CBA could "no longer be performed" or that Plaintiffs'

"attempt to challenge the termination while accepting the EO is a

contradiction in terms." Mot. 3, 14; *see generally* SA545–77.

Defendants ask to present admittedly new arguments because

"the enforcement order vastly expanded the [] injunction," Mot. 18 n.5,

but this contention is belied by the record. As discussed above,

Defendants acknowledged throughout the district court proceedings

that the injunction would require substantive compliance with the

Master CBA. *See supra*, p.8. Indeed, Defendants' entire balance-of-

equities argument in opposing the injunction presumed that they would

have to comply with the CBA's substantive terms—not merely issue a

12

*pro forma* statement that the CBA was "reinstated." *See id.* Defendants thus forfeited their "fundamental contradiction" argument, and the Court should not consider it.

In any event, Defendants fail to demonstrate that this argument is likely to succeed on the merits. *First*, CBAs remained in effect following the EO. Defendants left the Master CBA in place for over four months after the EO issued—before and after the Northern District of California enjoined the EO. *Supra*, p.5. During that time, they largely continued to comply with its substantive requirements. *Id.* Other agencies subject to the EO similarly left their CBAs in effect after the EO was issued. The Federal Bureau of Prisons left its CBA in place until September 2025, and the Departments of Energy and Treasury left CBAs in place until March 2026. SA733–34. The factual record thus flatly contradicts Defendants' assertion that "[i]f there is no FSLMRS …, there can be no collective bargaining agreement." Mot. 14.

*Second*, Defendants fail to support their claims that the Master CBA is incompatible with the EO because the FSLMRS grants collective bargaining rights and its "framework permeates collective bargaining-agreements." Mot. 13. The EO does not purport to terminate any given

13

CBA, nor does it undermine agencies' ability to carry out existing CBAs. The Master CBA has its own legal force, *e.g.*, *Miguel v. Dep't of Army*, 727 F.2d 1081, 1085, 1085 n.3 (Fed. Cir. 1984), and Defendants do not explain how the rights provided by the FSLMRS or the Master CBA's incorporation of statutory provisions renders the VA unable to comply with the CBA's terms.  Contrary to Defendants' assertions, Mot. 13, the FSLMRS is not necessary for Defendants to include union representatives in discussions about grievances[8] or to comply with the many Master CBA provisions that do not reference the FSLMRS,[9] and there is no issue about unit clarification anywhere in this case.[10] Indeed, the VA Secretary has independent statutory authority to enter into binding contracts with Plaintiffs irrespective of the FSLMRS,[11] and the EO does not interfere with these authorities.  EO, § 8(a).  And since April 2, when Defendants issued guidance instructing VA personnel to

---

[8] *See* SA062, 278-83.

[9] *E.g.,* SA105-108, 140-150.

[10] SA063.

[11] *See* 5 U.S.C. § 301 (providing authority to adopt regulations concerning the conduct of employees); 38 U.S.C. §§ 513 (general contracting authority); 7421(a) (providing authority to determine conditions of employment for medical personnel).

6107536

comply with the injunction, *see* SA758, Defendants have taken steps to comply with the Master CBA, showing that they are able to do so "outside the FSLMRS." Mot. 11.

*Third*, Defendants cannot show that the Master CBA is "inoperable" because of the EO's force. To start, this argument reveals Defendants' inconsistency; whereas in the district court Defendants argued that Plaintiffs needed to present their claim in the FLRA, they now argue that the FLRA is unavailable to Plaintiffs. *Compare* SA 551 *with* Mot. 3, 14. But the FLRA's availability is beside the point because this case is not about a narrow breach of the Master CBA, but rather whether Defendants violated Plaintiffs' First Amendment rights and the APA when they ordered the Termination. The district court found a violation, then ordered that the unlawful action be rescinded. This remedy is appropriate given that, as shown above, a collective bargaining agreement has legal force independent of the FSLMRS and agencies have been able to keep collective bargaining agreements in force even without FSLMRS coverage.

15

### 2. Defendants' cursory First Amendment and APA arguments do not demonstrate a likelihood of success.

Defendants make little effort to show how they could overturn the district court's rulings on the merits of Plaintiffs' claims. Defendants' sole argument about the retaliation claim is to point to the Ninth Circuit's decision in *AFGE v. Trump*, 167 F.4th at 1257. But that case challenged the EO, not the Termination, and it was decided on a different evidentiary record. Here, Plaintiffs challenge the VA's decision, and they introduced evidence of the VA's animus and retaliatory intent towards NVAC in particular, which the district court credited. A14–15. Defendants never address this evidence or the finding that Defendants failed to present "counterevidence to indicate the termination was not retaliatorily motivated and/or would have occurred in the absence of the Plaintiffs' [protected speech]." A15–16.

On Plaintiffs' APA claim, Defendants claim the Secretary acted within a "zone of reasonableness" and that the Secretary's implementation of a presidential directive is unreviewable under the APA. Mot. 15–16. The latter point is foreclosed by this Court's precedent. *New York I,* 133 F.4th at 70 n.17. The former fails because

16

6107536

Defendants do not address the district court's holding that Defendants failed to provide a reasoned explanation for the Termination, they acted arbitrarily by leaving some unions' CBAs in place while terminating others, and their invocation of "national security" was a *post hoc* rationale for the Termination. A20–24. Defendants do not acknowledge these findings or explain why they are likely to be reversed.

## B. Defendants are unlikely to succeed on the merits of their appeal from the enforcement order.

Orders enforcing injunctions are not appealable, and Defendants fail to articulate any theory of appellate jurisdiction over the enforcement order. That alone precludes Defendants from making a "strong showing" that they are likely to succeed in reversing that order. Even if the Court reviews the enforcement order, Defendants' specific performance arguments were waived and foreclosed by this Court's precedent. Finally, Defendants fail to demonstrate that the district court erred by ruling that the Re-Termination violated the preliminary injunction.

17

### 1. The enforcement order is not appealable.

Defendants cannot appeal an order enforcing a preliminary injunction.[12] *See New York v. Trump* ("*New York II*"), --- F.4th ---, 2026 WL 734941, *18 (1st Cir. Mar. 16, 2026).

If Defendants argue that the enforcement order is appealable because it modified the injunction, they are unlikely to succeed. To be an appealable "modification," an order must "substantially readjust the legal relations of the parties, … and not relate simply to the conduct or progress of litigation." *Morales Feliciano v. Rullan*, 303 F.3d 1, 7 (1st Cir. 2002). Doubts about appealability "are to be resolved against immediate appealability." *Id.* The enforcement order did not "substantially readjust" the parties' relations. *Id.* It is clear from the district court's opinion and order that the injunction, as issued on March 13, required Defendants to put the Master CBA back into *substantive* effect. The injunction required Defendants to "reinstate" the Master CBA, meaning to "restore to [its] previous effective state."

---

[12] Plaintiffs noted the lack of appellate jurisdiction below, SA723, and in their April 3, 2026 letter to this Court, Doc. 00118426651 at 3. Nevertheless, the Motion contains no theory of appellate jurisdiction. Defendants have therefore waived this jurisdictional argument.

18

6107536

Merriam-Webster.com Dictionary (last visited Apr. 13, 2026), https://www.merriam-webster.com/dictionary/reinstate.  And in its opinion accompanying the injunction, the district court "acknowledge[d] that the changes resulting from the … Master CBA's [termination] are significant and that reversing these changes will have associated costs of time and resources for the VA."  A27.  The injunction thus plainly required substantive reinstatement.

Defendants' contrary claim is not credible.  Mot 16.  Defendants' briefing and arguments opposing the injunction make clear that they understood all along that an injunction would require substantive compliance, not merely a meaningless acknowledgment that the CBA was "reinstated." As described above, Defendants opposed the injunction motion by arguing that reinstating the Master CBA would require "reverting back to the same practices" in place before the Termination, and they presented detailed statistics about office space square footage and the number of employees affected by reinstatement. *See supra*, p.8.

The parties and district court understood that Plaintiffs were seeking substantive reinstatement of the Master CBA, and that is what

19

the court ordered in the injunction. The enforcement order did not modify the injunction and is thus not appealable. *New York II*, 2026 WL 734941, at *18; *Rullan*, 303 F.3d at 7.

### 2. Defendants' specific performance arguments were waived and are otherwise not likely to succeed.

Defendants next argue that the district court exceeded its jurisdiction by compelling specific performance of the CBA. Mot. 17–18. While Defendants position this argument as a challenge to the enforcement order, they are really challenging the district court's authority to order the injunction, which required compliance with the Master CBA. Because Defendants failed to raise this argument at the preliminary injunction stage, *see generally* SA545–77, it is waived.

In any event, Defendants are unlikely to prevail on the merits of this argument. They invoke the Tucker Act and purported limits on ordering specific performance of a government contract, but *APHA*, 145 F.4th 39, forecloses these arguments. In *APHA*, this Court denied a similar government motion to stay a preliminary injunction, rejecting the government's Tucker Act argument because the district court did not "award 'past due sums'" and "neither the plaintiffs' claims nor the

6107536

court's orders depend on the terms or conditions of any contract." *Id.* at 50. The same is true here, where Plaintiffs are neither seeking monetary relief nor asserting a narrow breach of the CBA. Defendants allude to "contempt-backed" enforcement of the injunction as irreconcilable with "Congress's choices" to provide for limited judicial review of labor arbitrations and cite case law about specific performance of government contracts. Mot. 11–12, 16–17. But, at this juncture, the district court has simply ordered substantive compliance with the Master CBA without addressing any narrow allegation of breach. It is premature to predict that Defendants will breach specific terms of the Master CBA and whether or how the district court will address such an event. And, *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1 (1st Cir. 1989), also fails to support Defendants' specific-performance argument. *APHA* holds that *Coggeshall* has no force where, as here, the government is not "likely to succeed on its arguments that this is a breach of contract case that belongs in the Court of Federal Claims or

21

that it did not violate the APA." *APHA*, 145 F.4th at 56.[13] Defendants

are thus unlikely to successfully challenge the district court's authority

to issue the injunction in the first place.

Defendants fare no better to the extent they are challenging the

district court's authority to enforce the injunction. "[C]ourts are not

reduced to issuing injunctions and hoping for compliance. Once issued,

an injunction may be enforced." *Rhode Island State Council of*

*Churches v. Rollins*, 158 F.4th 304, 314–15 (1st Cir. 2025); *see also* 5

U.S.C. § 705 (in APA cases, district courts "may issue all necessary and

appropriate process to … preserve status or rights pending conclusion of

the review proceedings").  The injunction required Defendants to comply

with the Master CBA, *see supra*, p.9, and so the district court acted

within its jurisdiction when it enforced the injunction by mandating

"'compliance' with the collective-bargaining agreement," Mot. 16.

---

[13] *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57–58 (1st Cir. 2007), forecloses Defendants' argument about *Coggeshall* and sovereign immunity.  *See* Mot. 17 n.4.

6107536

### 3. The Re-Termination is not properly before this Court.

The district court's handling of the Re-Termination is not ripe for appellate review. Defendants' Re-Termination of the Master CBA was an improper attempt to end-run around the injunction, which required Defendants to reinstate the Master CBA. Instead of acting unilaterally, Defendants should have sought leave from the district court and given Plaintiffs an opportunity to oppose.

"[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is *modified or reversed*." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). "A defendant has an "obligation to demonstrate *to the district court* that an intervening change in fact or law warranted the discontinuation of the preliminary injunction." *State,* 2026 WL 887242, at *8.

The correct process through which Defendants may present its argument that the Re-Termination is proper as a "new action" is to file a motion to modify or dissolve the injunction in the district court. Mot. 18. In *Biden v. Texas*, 597 U.S. 785 (2022), after the district court enjoined an agency action, the government sought to "deal with the

problem afresh by taking *new* agency action," which is the same procedural option Defendants claim to invoke here.  Mot. 18.  But in *Biden*, the government issued the new agency action (so that its reasoning would be available to the courts), then *held the new action in abeyance while the government went to court to seek relief from the still-operative injunction.  Id.* at 796.[14]  Indeed, earlier this year, a district court in Washington enforced this procedure on the government in a materially indistinguishable case involving AFGE and an unlawfully terminated collective bargaining agreement.  In *AFGE v. Noem*, DHS terminated a collective bargaining agreement, the district court issued a preliminary injunction, and then DHS re-terminated the agreement and purported to put its re-termination into effect.  *See* 2026 WL 113599 (W.D. Wash. Jan. 15, 2026).  In the ensuing litigation, the district court rejected the government's attempted end-run around the still-operative injunction and required the government to file a motion to dissolve or modify the preliminary injunction. *Id.* at *3–4.

---

[14] For this reason, Defendants' complaints about being "indefinitely bound" to the injunction and needing to "guess" at how to implement a re-termination, Mot. 3, 20, lack merit.

6107536

Defendants' request to stay the enforcement order seeks to bypass the district court and to deprive Plaintiffs of an opportunity to explain why the Re-Termination does not cure the constitutional and APA problems already identified by the district court.[15] The Court should not allow Defendants to circumvent the process.

## C. Defendants fail to demonstrate irreparable harm.

Defendants fail to show they "will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. Defendants invoke "national security," Mot. 21, but they make no argument (and identify no evidence) that the injunction actually impacts national security. This is fatal because, as the D.C. Circuit ruled in denying a stay pending appeal in a case about the EO, "the government must show that requiring [the VA] to adhere to the [Master CBA]'s collective bargaining requirements during the pendency of the appeal will harm national security or otherwise irreparably injure the government." *FEA*, 2025 WL 2738626, at *2.

---

[15] For example, neither *Regents*, nor the case it is based on, *S.E.C. v. Chenery Corp.*, 322 U.S. 194 (1947), sets forth a standard for curing a constitutional violation, and neither case pertains to a preliminary injunction.

25

Defendants' other citations are distinguishable. Mot. 21. *AFSA* concerns Foreign Service employees, many of whom work abroad, and so are directly connected to national security. 2025 WL 1742853, at *2. In *NTEU*, the CBA had not been terminated yet, so, unlike here, the court concluded the union had not suffered any concrete harms. 2025 WL 1441563, at *2–3. And *AFGE* is about the EO's impact on the federal government as a whole, meaning the Ninth Circuit did not engage in the agency-specific harm analysis that the district court did here and that the D.C. Circuit did in *FEA*. 2025 WL 2738626, at *3. Of the appellate decisions relating to the EO, this case is most like *FEA*.

Defendants next complain that the costs of complying with the Master CBA are "significant and irreparable." Mot. 22. But Defendants do not, and cannot, explain why compliance with contractual terms that they bargained for could cause irreparable injury, when Defendants left the Master CBA in place for months after the EO's issuance and have spent the past ten days re-implementing the Master CBA. "[O]rdinary compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). Congress has already funded Defendants'

26

operations for this year, Pub. L. No. 119-37, div. D, tit. II, 139 Stat. 495 (2025), and the government's expenditure of "congressionally appropriated funds" is not a cognizable harm.  *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 943 (9th Cir. 2025).  In any event, Defendants' cost complaints are overblown.  For example, Defendants claim harm from having to re-purpose office space, Mot. 22, but they offer no specific evidence showing that compliance is burdensome and at least some of that space is sitting vacant.  SA738.

## D.     Defendants fail to carry their burden on the remaining equitable factors.

The remaining equitable factors favor Plaintiffs.  Union membership declined by nearly 50% in 2025*, see* SA403, and employees represented by NVAC have lost benefits protected by the Master CBA, *see* SA402.  For example, NVAC-represented employees have been denied union representation during disciplinary proceedings, SA496–98, and have been denied parental leave guaranteed under the Master CBA, SA513; SA742; SA746–49.  As the district court acknowledged, "[d]isciplinary processes, once concluded, have an immediate and irreparable effect on the employee(s) in question," and "[p]arents cannot

6107536

turn back the clock to have more time with an infant." A26.
Defendants do not rebut this record evidence, and none of these harms could be redressed after judgment.

## IV.   CONCLUSION

The Motion to Stay should be denied.

6107536

Dated: April 13, 2026    KEKER, VAN NEST & PETERS LLP


*/s/ Travis Silva*
Brook Dooley
Travis Silva
JiLon Li
Alexandra Wheeler
Elizabeth Heckmann
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188


Dated: April 13, 2026    ZIMMER, CITRON & CLARKE LLP


*/s/ David Zimmer*
David Zimmer
Edwina Clarke
130 Bishop Allen Drive
Cambridge, MA 02139
Telephone: 617-676-9421

Counsel for American Federation of
Government Employees Local 2305
and American Federation of
Government Employees National VA
Council

6107536

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned counsel hereby certifies that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,184 words.

This document also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word (Office 16) in size 14 of Century Schoolbook.

Dated:  April 13, 2026        KEKER, VAN NEST & PETERS LLP

*/s/ Travis Silva*
Travis Silva