No. 26-1321

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305
and AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES
NATIONAL VETERANS AFFAIRS COUNCIL,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS and DOUGLAS
A. COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Rhode Island

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

CHARLES C. CALENDA
*United States Attorney*

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney
General*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
TYLER J. BECKER
*Attorneys, Appellate Staff
Civil Division, Room 7212
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4820*

**TABLE OF CONTENTS**

<u>**Page**</u>

I.      The Government Is Likely To Succeed On The Merits. ........................................1

        A.      The District Court Erred By Invalidating VA's Re-Termination
                Of The Collective-Bargaining Agreement. ......................................................1

        B.      The District Court's Orders Create A Shadow FSLMRS............................3

                1.      The Preliminary Injunction Is Unlawful...........................................3

                2.      The District Court Lacks Jurisdiction To Order VA To
                        Perform Collective-Bargaining-Agreement Duties...........................7

II.     The Equities Favor A Stay. .................................................................................. 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

The district court twice reinstated a collective-bargaining agreement covering employees who no longer have the right to collectively bargain, with a union that no longer serves as their exclusive representative, subject to a statutory framework that no longer applies—the second time without identifying any error in VA's reasoned, non-retaliatory explanation for terminating the agreement. Plaintiffs offer no sound theory supporting these orders, much less justifying the court's extraordinary decision to police federal-labor relations itself by enforcing the agreement's terms through contempt-backed injunctions, rather than heeding the limited enforcement mechanisms in both the statute and the agreement. Plaintiffs' largely procedural quibbles do not withstand scrutiny, and the obligations that the district court ordered the Department of Veterans Affairs (VA) to fulfill are significant, costly, and irremediable. This Court should grant a stay pending appeal.

## I.    The Government Is Likely To Succeed On The Merits.

### A.    The District Court Erred By Invalidating VA's Re-Termination Of The Collective-Bargaining Agreement.

If an agency's grounds for taking action are deemed inadequate, "the agency can 'deal with the problem afresh' by taking *new* agency action." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020). That is what happened here. The court preliminarily enjoined VA's termination of the collective-bargaining agreement as retaliatory and unreasoned but agreed that VA could re-terminate. A29–30. VA then issued a fresh decision fully explaining why termination naturally follows from VA's

exclusion from the FSLMRS. That explanation was robust and entirely divorced from the circumstances that the court previously deemed retaliatory. Dkt. 36-1; *see* Mot. 20.[1]

Neither here nor below have plaintiffs shown any Administrative Procedure Act (APA) defects or identified any retaliation evidence regarding the re-termination. Nevertheless, the district court enjoined the re-termination *without explanation. See* A31. That alone warrants a stay. *See* Mot. 19–20.

Like the district court, plaintiffs make no attempt to explain why VA's re-termination is unlawful. Instead, they focus on perceived procedural flaws, arguing (at 21–23) that VA should have moved to modify the injunction before re-terminating. But VA had just received the district court's unambiguous clarification that the injunction did not bar re-termination. A30. Thus, unlike in plaintiffs' cited cases (at 23–24), there was no need to alter the injunction before taking new action. *See Biden v. Texas*, 597 U.S. 785, 794–96 (2022) (injunction prohibited agency's proposed new decision); *AFGE v. Noem*, No. 2:25-cv-00451-JNW, 2026 WL 113599, at *1 (W.D. Wash. Jan. 15, 2026) (injunction prohibited agency from terminating agreement).

Plaintiffs also argue (at 18–20) that VA cannot appeal the enforcement order, which (among other things) deemed re-termination "not in compliance with" the injunction. A31–32. Plaintiffs' contention (at 18) that this order is not appealable

---

[1] Plaintiffs do not argue the government forfeited any defense of the re-termination, nor could they. The district court invalidated the re-termination without giving VA an opportunity to defend it. And VA raised its objections in its district-court stay motion.

because it "did not 'substantially readjust'" VA's obligations is puzzling; the order constituted a judicial about-face regarding re-termination and effectively enjoined a new agency action. More importantly, plaintiffs' contention is irrelevant; even if the original injunction barred re-termination, there is no doubt that VA properly appealed that original injunction too. Either way, this Court has jurisdiction in this appeal to address the district court's rulings.

### B.    The District Court's Orders Create A Shadow FSLMRS.

If the Court stays the district court's unexplained invalidation of VA's re-termination, it need go no further. But the district court also fundamentally erred in reinstating a collective-bargaining agreement outside the FSLMRS's collective-bargaining regime. And by further arrogating to itself the power to *enforce* such an agreement—swapping in its own contempt threats for the carefully calibrated remedial scheme that Congress crafted and the parties bargained for—it committed an even more egregious error.

### 1.    The Preliminary Injunction Is Unlawful.

Plaintiffs contend (at Opp. 7, n.6, 13–15) that the district court lawfully ordered VA to reinstate the collective-bargaining agreement, insisting that the agreement remains valid even assuming that the EO validly excluded VA from the FSLMRS provisions under which that agreement was formed and on which its enforcement relies. But like the district court, plaintiffs overlook that accepting the EO's validity means that they no longer have a right to be VA employees' exclusive representative;

3

VA's employees (with certain exceptions) may no longer be part of an FLRA-certified bargaining unit; and the exclusive means of enforcing compliance are no longer available. The district court lacked jurisdiction to adjudicate this labor dispute about a collective-bargaining agreement executed under the FSLMRS, made inapplicable by an intervening (and here unchallenged) change in law.

Plaintiffs dodge this argument, asserting (at 12–13) that defendants forfeited it. But below, as here, defendants argued that the district court could not reinstate the collective-bargaining agreement because the exclusive means through which unions may attack federal agencies' alleged violation of such agreements are those Congress established in the FSLMRS, *i.e.*, through the FLRA (and then, in certain circumstances, in a court of appeals). *See* Dkt. 17, at 21–24 ("That scheme is the exclusive avenue for raising and adjudicating legal challenges ...."); Mot. 12–14. Whether viewed as a jurisdictional defect in the district court's adjudication of this dispute or a merits error in its injunction resuscitating the collective-bargaining agreement, *see* Mot. 14, the problem remains the same: The statutory scheme is comprehensive and exclusive, and collective-bargaining agreements made under the FSLMRS cannot be enforced when an agency is excluded from that statute's purview. In other words, there is no role for a district court to play here—it is either the FLRA (if the FSLMRS applies) or nothing (if it does not). *See AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("[T]he fact that National AFGE may not pursue a claim through the CSRA does not mean that it has access to the courts. Rather, it

4

means that National AFGE may not raise the claim at all."). That has been VA's point throughout.

Plaintiffs assert (at 13–14) that it remains factually possible for VA to comply with the collective-bargaining agreement's terms.[2] That misses the point. Even if VA could include plaintiffs' "representatives in discussions" as a *factual* matter, Opp. 14, the EO eliminated plaintiffs' *legal* status as VA employees' representative. Moreover, many of the agreement's terms depend on the application of the FSLMRS; for example, the agreement permits the parties to file "exception[s]" to private arbitrators' awards with the FLRA in accordance with the FSLMRS, SA285. But even terms that do not directly "reference the FSLMRS," Opp. 14 (citing, *e.g.*, SA106, requiring 14 days' notice regarding reprimands), are premised on the FLRA's availability to adjudicate alleged violations, *see* Mot. 12–13. And plaintiffs' suggestion (at 14) that a collective-bargaining agreement by "its own legal force" keeps an agency fettered to collective-bargaining obligations that—per a presidential determination—are no longer consistent with national-security needs cannot be reconciled with any reasonable construction of 5 U.S.C. § 7103(b). *See* Mot. 18.

Nor is it relevant that the government did not terminate collective-bargaining agreements immediately upon the EO's issuance. *See* Opp. 13. The EO's validity was

---

[2] Plaintiffs misstate the status quo post-EO and pre-termination; VA stopped collecting dues and began requesting stays of grievance and arbitration proceedings well before terminating the agreement, *see* SA602–03.

promptly challenged, and, until the Ninth Circuit stayed the preliminary injunction of the EO, VA maintained the agreement given ongoing litigation. Such respect for judicial processes is hardly evidence that the agreement is legally compatible with VA's exclusion from the FSLMRS.

VA's general contracting authority is similarly irrelevant. *See* Opp. 14 & n.11. Even assuming VA could enter into some collective-bargaining agreement outside the FSLMRS—which is dubious, given the comprehensive statute—*this* agreement is predicated on the FSLMRS, including plaintiffs' being the exclusive representative for employees in FLRA-certified bargaining units and the FSLMRS's procedures regarding grievances, arbitration, and FLRA review. *See* Dkt. 13-1, at 3, 219–26.

Finally, the EO's uncontested elimination of FSLMRS rights and enforcement mechanisms also rebuts the district court's First Amendment and APA grounds for invalidating VA's termination of the collective-bargaining agreement. The EO alone was adequate reason to terminate the agreement: It eliminated key premises of that agreement, and once the Ninth Circuit allowed the EO to take effect, termination of this vestigial agreement several days later was the natural result. Properly understood, the termination was neither arbitrary nor unconstitutionally motivated. The district court's contrary reasoning was so flawed, *see* Mot. 15-16, even plaintiffs make little attempt to defend it.

### 2.     The District Court Lacks Jurisdiction To Order VA To Perform Collective-Bargaining-Agreement Duties.

The district court further exceeded its jurisdiction by mandating specific performance of the entire collective-bargaining agreement. Mot. 16–18. That jurisdictional error requires vacatur of the preliminary injunction or, at minimum, the enforcement order.

Plaintiffs' procedural objections lack merit. The enforcement order is itself appealable because it "modif[ied]" the preliminary injunction, 28 U.S.C. § 1292(a)(1), by stating for the first time that the injunction encompassed "compliance with the Master CBA" in addition to "reinstatement." A31–32. And regardless, the requirement that VA comply with the collective-bargaining agreement's terms is properly before this Court whether it stems from the preliminary injunction or the enforcement order; defendants appealed both orders. *See supra* p.3.

Plaintiffs likewise err in contending (at 20) that defendants forfeited an argument that the district court "exceeded its jurisdiction" by compelling specific performance. "[J]urisdictional defenses cannot be waived" and "may be raised for the first time on appeal." *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1162 n.6 (1st Cir. 1987). In any event, defendants timely raised the argument because it was not clear that plaintiffs' preliminary-injunction motion—which sought an injunction barring defendants from "effectuat[ing] the Termination," Dkt. 14, at 1—sought judicial superintendence of compliance with the collective-bargaining agreement. As

7

noted, even before terminating, VA had stopped performing some duties, *see supra* n.2, and plaintiffs have no explanation why reversing the termination would restart across-the-board compliance under threat of contempt. Indeed, the logical consequence of plaintiffs' reinstatement request was that subsequent allegations of breach would be raised through the grievance and arbitration process contained in the agreement. It became clear that plaintiffs wanted the district court to enforce the collective-bargaining agreement's terms only when plaintiffs later requested an order "requiring Defendants to comply with the [agreement]," SA688, at which point defendants timely explained that the court lacks such authority, *see* SA697–01.

On the merits, plaintiffs have no answer to the fact that, under this collective-bargaining agreement, they must raise any allegation of breach through a grievance and arbitration process. *See* SA278–85. Where an agency is subject to the FSLMRS's provisions (VA is not, given the EO), the FLRA may review most arbitration decisions, *see* 5 U.S.C. § 7122(a), with some FLRA orders subject to review by a court of appeals, *see id.* § 7123(a). This reticulated scheme affords district courts no role in enforcing collective-bargaining agreements and confirms the court's lack of jurisdiction to do so here. *See AFGE*, 716 F.3d at 638. Plaintiffs cannot have it both ways, reinstating the agreement while bypassing its dispute-resolution terms.

The Tucker Act also precludes jurisdiction. Plaintiffs respond (at 21) that they are not "seeking monetary relief nor asserting a narrow breach of the CBA." But plaintiffs' choice to seek injunctive rather than monetary relief *worsens* the problem.

"The only remedy to which the United States has consented in cases of breach of contract is to the payment of money damages in either the Court of Claims, if the amount claimed is in excess of $10,000, or the district courts, where the amount in controversy is $10,000 or less." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (citations omitted). Federal courts do not have jurisdiction "to order specific performance by the United States." *Id.* And plaintiffs provide neither an explanation of when they consider a breach "narrow," nor any support for their suggestion that a breach's magnitude is relevant to the jurisdictional question.

This Court's denial of a stay in *American Public Health Association* (*APHA*) *v. National Institutes of Health*, 145 F.4th 39 (1st Cir. 2025), does not support the district court's jurisdiction. First, plaintiffs omit that the Supreme Court subsequently *granted* a partial stay, *NIH v. APHA*, 145 S. Ct. 2658 (Mem.) (2025), substantially abrogating this Court's denial. This Court has recognized that it must apply Justice Barrett's "controlling concurrence" in *APHA*, not the reasoning of this Court's denial order. *Massachusetts v. NIH*, 164 F.4th 1, 11 (1st Cir. 2026). That concurrence "distinguishes between challenges to agency-wide policies, which belong in district court," and the termination of contracts "that result from those policies, which belong in the [Court of Federal Claims]." *Id.*

Plaintiffs' claim is founded in a contract, not a separate agency- or government-wide policy (such as the EO). Their suit is premised on an alleged breach of contract—VA's termination of the collective-bargaining agreement despite its

durational provision, *see* SA349—and plaintiffs have further argued that VA is breaching terms regarding, *e.g.*, leave and disciplinary proceedings, SA687-88. Furthermore, the district court's relief was plainly contract-based. The preliminary injunction orders reinstatement of the contract, A29, and the enforcement order requires "compliance with" the contract's terms, A32. This is precisely the type of order that the court lacks authority to issue. *See APHA*, 145 S. Ct. at 2660; *Massachusetts*, 164 F.4th at 12 (recognizing that *APHA* stayed a district court's "order requiring the terminations [of contracts] to be undone").

## II.    The Equities Favor A Stay.

The district court's orders impose irreparable harms to VA. *See* Mot. 21–23. Plaintiffs argue (at 26–27) that VA bargained for, and previously complied with, the agreement. Neither fact changes that these harms are severe. VA bargained for the agreement *before* the President excluded it from the FSLMRS, and, following the EO, VA left the agreement in place only for a limited time given pending litigation. Such circumstances no longer justify remaining a party to that agreement and incurring the resultant costs for which there is no remedy if VA later prevails. And, contrary to plaintiffs' contention (at 27), the unnecessary expenditure of government funds is an irreparable harm "if the funds 'cannot be recouped' and are thus 'irrevocably expended.'" *APHA*, 145 S. Ct. at 2660.

Plaintiffs rely (at 25) on *Federal Education Association v. Trump*, where the D.C. Circuit concluded the government did not demonstrate "how the preliminary

10

injunction *as to* [*the agency defendant*] imposes irreparable injury." No. 25-5303, 2025 WL 2738626, at *2 (D.C. Cir. Sept. 25, 2025); *see also id.* at *3 (noting that the evidence was limited to "indirect effects on national security"). Here, in contrast, VA has extensively catalogued how the injunction irreparably harms it, including by redirecting thousands of employees from their agency tasks, losing patient-care hours, and restoring union space, none of which plaintiffs contest. *See* Mot. 21–23; *see also* Dkt. 45-2.

For their part, plaintiffs fail to grapple with previous courts' balancing of their speculative membership and bargaining-power harms against the government's national-security and irreparable-cost injuries. As the Ninth Circuit observed, "the government's asserted interest in national security outweighs the interests of the plaintiff unions, considering the balance Congress struck in § 7103(b)(1)." *AFGE v. Trump*, 167 F.4th 1247, 1259 (9th Cir. 2026). And regardless, "the harm to the unions would likely be mitigated to a fair extent by reinstating the terminated agreements if the union plaintiffs were to prevail." *Id.* Overall, the balance of harms favors a stay.

11

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
    General*

CHARLES C. CALENDA
  *United States Attorney*

MELISSA N. PATTERSON

*s/ Joshua M. Koppel*

JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
TYLER J. BECKER
  *Attorneys, Appellate Staff
  Civil Division, Room 7212
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-4820*

April 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,597 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
JOSHUA M. KOPPEL

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

*s/ Joshua M. Koppel*
JOSHUA M. KOPPEL