# United States Court of Appeals
## For the First Circuit

———

No. 26-1321

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2305; AMERICAN
FEDERATION OF GOVERNMENT EMPLOYEES NATIONAL VETERANS AFFAIRS
COUNCIL,

Plaintiffs, Appellees,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A.
COLLINS, in the official capacity as U.S. Secretary of Veterans
Affairs,

Defendants, Appellants.

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Melissa R. DuBose, U.S. District Judge]

———

Before

Barron, Chief Judge,
Aframe and Dunlap, Circuit Judges.

———

Charles C. Calenda, United States Attorney, Brett A. Shumate,
Assistant Attorney General, Yaakov M. Roth, Principal Deputy
Assistant Attorney General, Melissa N. Patterson, Joshua M.
Koppel, Benjamin T. Takemoto, Tyler J. Becker, Attorneys,
Appellate Staff, Civil Division, U.S. Department of Justice, were
on brief for appellants.
Brook Dooley, Travis Silva, JiLon Li, Alexandra Wheeler,
Elizabeth Heckmann, Keker, Van Nest & Peters LLP, David Zimmer,
Edwina Clarke, and Zimmer, Citron & Clarke LLP were on brief for
appellees.

May 16, 2026

**BARRON**, <u>Chief Judge</u>.    The U.S. Department of Veterans Affairs ("VA") and its Secretary, Douglas A. Collins (collectively, the "defendants"), seek to stay two District Court orders -- one issuing a preliminary injunction and the other enforcing that injunction -- while their interlocutory appeals of those orders are pending in this Court.  The orders concern the termination of a collective bargaining agreement between the VA and the American Federation of Government Employees National Veterans Affairs Council ("NVAC").  The agreement also covers employees whom the American Federation of Government Employees Local 2305 ("AFGE Local 2305") represents.

NVAC and AFGE Local 2305 (collectively, the "plaintiffs") challenged the defendants' termination of the agreement in the United States District Court for the District of Rhode Island.  The plaintiffs allege that the termination violated the Administrative Procedure Act ("APA") and the First Amendment to the U.S. Constitution.  We grant the defendants' motion for a stay pending appeal in part and deny it in part.  The defendants' accompanying motion for an administrative stay is denied as moot. <u>See</u> <u>Victim Rts. L. Ctr.</u> v. <u>U.S. Dep't of Educ.</u>, 154 F.4th 5, 11 (1st Cir. 2025).

**I.**

**A.**

The Civil Service Reform Act of 1978 includes the Federal Service Labor-Management Relations Statute ("FSLMRS"), which gives federal employees the "right" to collectively bargain. See Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191 (1978) (codified at 5 U.S.C. §§ 7101-06, 7111-23, and 7131-35); Ohio Adjutant Gen.'s Dep't v. Fed. Lab. Rels. Auth., 598 U.S. 449, 452 (2023). The FSLMRS creates "a comprehensive framework governing labor-management relations in federal agencies," Ohio Adjutant, 598 U.S. at 452, and establishes the Federal Labor Relations Authority ("FLRA") to manage this framework, see 5 U.S.C. § 7104.

The FLRA determines whether a union has been selected, for collective bargaining purposes, to be the "exclusive representative" for the employees in an agency or agency subdivision. Id. § 7105(a)(2)(B). It also adjudicates disputes over alleged unfair labor practices and arbitration awards made pursuant to collective bargaining agreements between agencies and unions. See id. § 7105(a)(2)(G)-(H).

The FSLMRS expressly gives the President of the United States the authority to "exclud[e]" an agency or an agency's subdivision from the statute's coverage upon making certain findings. Id. § 7103(b)(1). Those findings are that: (1) "the agency or subdivision has as a primary function intelligence,

counterintelligence, investigative, or national security work[;]" and (2) the FSLMRS's protections and collective bargaining framework "cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." Id.

**B.**

On March 27, 2025, President Donald Trump issued an executive order (the "EO") pursuant to § 7103(b)(1) in which, after making the two findings described above, he excluded the VA from the FSLMRS's coverage. See Exec. Order No. 14251, 90 Fed. Reg. 14553, 14553-54 (Mar. 27, 2025). In the EO, the President "delegated" authority to the Secretary of the VA to suspend that "exclusion[]" for "any subdivision[]" of the VA, such that those subdivisions would remain subject to the FSLMRS. Id. at 14555.

In April 2025, various unions (not including the plaintiffs here) sued the VA, Secretary Collins, President Trump, and other federal agency officials in the Northern District of California. The unions alleged that the EO, among other things, "constituted First Amendment retaliation" for their advocacy. Am. Fed'n of Gov't Emps. v. Trump, 148 F.4th 648, 653 (9th Cir. 2025) ("AFGE I"). A few days later, Secretary Collins exercised his delegated authority under the EO and exempted specific unions from the FSLMRS's coverage by name. He did not exempt the plaintiff unions in this case.

- 5 -

On June 24, 2025, the federal district court in the Northern District of California preliminarily enjoined the defendants there from implementing the EO against the plaintiff unions involved in that case. Id. It concluded that those unions were likely to succeed on their First Amendment retaliation claim. See id. The Ninth Circuit thereafter granted a motion to stay the preliminary injunction pending appeal, id. at 656, and ultimately vacated it on the merits, see Am. Fed'n of Gov't Emps. v. Trump, 167 F.4th 1247, 1259 (9th Cir. 2026) ("AFGE II").

## C.

On August 6, 2025, Secretary Collins sent a letter to NVAC, notifying the union that the Master Collective Bargaining Agreement ("CBA") between it and the VA had been terminated effective that day. The CBA was signed in August 2023, went into effect on August 8, 2023, and provided that it would "remain in full force and effect for a period of three years after its effective date." The CBA further provided that it "may only be amended, modified, or renegotiated in accordance with the provisions of this Agreement," and that "[n]egotiations initiated by either party during the term to add to, amend, or modify this Agreement may be conducted only by mutual consent of the parties."

Later that fall, on November 4, 2025, the plaintiffs filed a complaint in the District of Rhode Island alleging that the termination of the CBA: (1) violated § 706(2)(A) of the APA on

arbitrary and capricious grounds; (2) violated § 706(2)(B) of the APA on the grounds that the termination, in turn, contravened the First Amendment's protections against, among other things, expression-based retaliation, and also contravened the Fifth Amendment's Equal Protection Clause; (3) violated § 706(2)(C) on the grounds that the Secretary exceeded his authority in issuing the termination; (4) violated various protections guaranteed by the First Amendment; and (5) violated the Fifth Amendment's Equal Protection Clause on the grounds that the termination subjected the plaintiffs to "disfavored" treatment based on their perceived "oppos[ition] to the Trump Administration."

The plaintiffs named as defendants the VA, as "a party and signatory to the [CBA]," and Secretary Collins, in his official capacity.  The plaintiffs sought, among other things, a declaratory judgment and an order permanently enjoining the defendants from "implementing or enforcing the August 6 termination."

Three weeks later, the plaintiffs filed an amended complaint and a motion for a preliminary injunction.  The amended complaint dropped the equal protection claim and the equal protection-based APA claim, both of which were partially rooted in the defendants' initial removal of the FSLMRS's protections for only some unions, including the plaintiffs.  The amended complaint also alleged that, after the plaintiffs' lawsuit was filed, the defendants removed the FSLMRS's protections from the other unions

that had initially remained covered by that statute. In the amended complaint, the plaintiffs asked for three new forms of relief -- a preliminary injunction, relief pending review under 5 U.S.C. § 705, and permanent relief under 5 U.S.C. § 706.

### D.

On March 13, 2026, the District Court granted the plaintiffs' preliminary injunction motion and ordered that the defendants "shall reinstate the . . . CBA -- as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the . . . CBA -- for the remainder of the agreed-upon term provided in the . . . CBA." The District Court reasoned that the plaintiffs were likely to succeed on their First Amendment retaliation claims "because the termination of the . . . CBA on August 6 seem[ed] substantially motivated by the [p]laintiffs' history and frequency of vocally opposing changes to labor policies."

First, the District Court identified certain statements from a White House fact sheet that accompanied the EO, as well as other statements from VA officials related to the terminations of collective bargaining agreements, all of which highlighted unions' advocacy. Second, it noted that the defendants initially excluded some unions from the EO's coverage by name, "rather than [by] subdivisions" of the agency as the EO "actually authorized." Third, it noted that the U.S. Office of Personnel Management

("OPM") had told federal agencies to refrain from terminating collective bargaining agreements until certain litigation challenging the EO had concluded but that the defendants terminated the CBA anyway -- "far from the conclusion of th[e] litigation and far earlier than the guidance from the OPM indicated was appropriate." Finally, it found that, "[o]ther than . . . one, vague, post hoc statement about national security," there was "zero indication" that the defendants would have terminated the CBA absent a "retaliatory motive."

The District Court separately determined that the plaintiffs were likely to succeed on their arbitrary and capricious claim under the APA. It did so largely because it determined that the August 6 termination letter, as well as other "same-day statements the [VA] made when announcing" the termination, did not mention national security, which was the basis that the FSLMRS and the EO provided for excluding agencies from the FSLMRS's protections.

### E.

On March 18, 2026, a VA official shared a letter with other VA officials noting that the CBA had been reinstated pursuant to the preliminary injunction. Then, on March 20, 2026, the defendants filed a motion to clarify the preliminary injunction. The motion asked the District Court, among other things, to clarify

- 9 -

whether the defendants were permitted to terminate the reinstated CBA "for other reasons."

That same day, the plaintiffs filed a motion to enforce the preliminary injunction. In their motion, the plaintiffs alleged that the defendants, "[w]hile asserting that the [CBA] ha[d] been reinstated," were "not, in fact, complying with the terms of the [CBA] and, thus, . . . [were] not complying with the" preliminary injunction. Specifically, they alleged that the defendants "continue[d] to deny employees benefits due under the [CBA], to deny union officials official time to attend to union duties, to deny employees right during the disciplinary process, and to refuse to participate in the negotiated grievance and arbitration procedure."

On March 23, 2026, before ruling on the motion to enforce, the District Court "granted" the defendants' motion to clarify the preliminary injunction. It explained, in relevant part, that it was "at a loss to understand how . . . the [preliminary] injunction could possibly be read to order that . . . the [d]efendants are wholesale prohibited from terminating the . . . CBA again prior to the end of the three-year term governing the contract." The District Court further explained that "[t]o reinstate the . . . CBA means that all parties covered by [the CBA] will continue to be covered by [the CBA] until it is terminated or amended in a lawful manner." It concluded the order

by stating that "the [c]ourt expects that the [d]efendants' compliance with the plain language of the preliminary injunction order will not be delayed" and that "the pending motion for enforcement is no reason to delay compliance with the [c]ourt's March 13, 2026 order to reinstate the . . . CBA in full."

The next day, on March 24, 2026, the defendants filed their opposition to the plaintiffs' motion to enforce. The defendants argued that the motion to enforce "is, in essence, an improper request that the [c]ourt police the terms of the three-year [CBA]." They contended in that regard that "[t]he root of this improper request is clear: [the] [p]laintiffs conflate the [c]ourt's order reinstating the . . . CBA (including its panoply of remedies available for breach thereof) with an order mandating adherence to each and every one of its terms (under penalty of judicial contempt)." The defendants continued that the "[p]laintiffs' recourse for alleged breaches is to follow the procedures provided in the [CBA] -- the same procedures that they followed before the termination of the . . . [CBA]."

That same day, the District Court scheduled a hearing on the plaintiffs' enforcement motion to be held on March 27, 2026. One day before the hearing on the motion to enforce, however, the defendants filed a status report with the District Court. The report stated that the defendants had "re-terminated" the CBA, effective that day. The defendants attached a letter from

Secretary Collins to NVAC notifying NVAC of the termination.  It explained that the CBA was being terminated again because (1) President Trump excluded the VA from the FSLMRS's coverage, (2) the CBA cannot operate without the FSLMRS, and (3) "continued adherence" to the CBA would be inconsistent with both the President's EO and the "national security determinations therein."

That same day, the plaintiffs filed their reply to the defendants' opposition to the plaintiffs' enforcement motion, as well as a "response" to the defendants' status report.  In their reply, the plaintiffs argued that the preliminary injunction "clearly requires [the] [d]efendants to abide by the substantive terms of the [CBA] with respect to all employees who were covered by the [CBA] before the [t]ermination."  They further contended that the "[d]efendants' opposition [to the plaintiffs' preliminary injunction motion], [d]efendants' oral argument presentation, and the [preliminary injunction] [o]rder itself all address the application of the [CBA] -- in a meaningful, substantive way -- to covered employees."

In their response to the defendants' status report noting the re-termination, the plaintiffs contended that the defendants should have sought leave from the District Court before re-terminating the CBA.  The plaintiffs also asserted that the "[d]efendants have no free-standing authority to terminate the [CBA] during its term."

- 12 -

After the hearing on March 27, 2026, the District Court granted the plaintiff's motion to enforce.  It concluded that the re-termination of the CBA was not in compliance with the preliminary injunction as clarified, which required that any re-termination be done "in a lawful manner."  It then ruled that "the re-termination letter shall not be given any force or effect."

The District Court also "order[ed] and instruct[ed]" that "[t]he [d]efendants' reinstatement of and compliance with the . . . CBA . . . be in both form and substance."  It further directed the defendants to continue processing "the currently pending grievances and arbitrations submitted under the . . . CBA."

On April 2, 2026, the defendants issued guidance pursuant to the District Court's enforcement order.  The guidance noted that, "the August 6, 2025, termination letter and the March 26, 2026, re-termination letter will not be given any force or effect."

### F.

The defendants filed an emergency motion to stay the preliminary injunction and the enforcement order pending the defendants' interlocutory appeal to the Court of the injunction and order.  The District Court denied the motion.  The defendants thereafter filed in this Court a timely motion for a stay pending appeal and an administrative stay of both the preliminary

- 13 -

injunction and the order granting the motion to enforce the preliminary injunction.

## II.

A stay is an extraordinary intervention into the usual process of appellate adjudication. See New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025). As the party seeking such intervention here, the defendants have the burden to "(1) make a strong showing that they are likely to succeed on the merits in their appeal; (2) show that they will be irreparably injured absent a stay; (3) show that issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) show that the stay would serve the public interest." Id. (citation modified) (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). The first two factors -- likelihood of success and irreparable injury -- are the most critical. See id. at 66. We review legal questions de novo. See Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, 18 F.4th 38, 43 (1st Cir. 2021).

## III.

We start with the stay motion's request to stay the preliminary injunction. As we will explain, we conclude that the defendants have not shown that they are entitled to that stay.

- 14 -

### A.

Consistent with Nken, we focus first on the critical "likelihood of success" factor.  See 556 U.S. at 434.  The defendants fail to make the required "strong showing."  Id.

### 1.

The defendants' lead argument is that the President's decision to exclude the VA from the FSLMRS rendered the CBA "inoperable" because "VA employees may not collectively bargain, AFGE may not exclusively represent VA employees, and the [CBA's] negotiated-grievance process -- which is enforced through arbitration, FLRA orders, and limited review by courts of appeals -- is no longer available."  For that reason, the defendants contend, it was "error" for the District Court to "order[] reinstatement of a collective-bargaining agreement against an agency now outside the statutory collective-bargaining framework."[1]

---

[1] Although an order issuing a preliminary injunction is not itself a final order, it is subject to interlocutory appeal under 28 U.S.C. § 1292(a)(1).  Moreover, although the CBA has been reinstated in response to the enforcement order, rather than in response to the preliminary injunction itself, the request to stay that preliminary injunction, if granted, would be of use to the defendants precisely because the enforcement order depends on the preliminary injunction being enforceable.  See Dep't of Homeland Sec. v. D.V.D., 145 S. Ct. 2627, 2629 (2025) (ruling that a "remedial order cannot . . . be used to enforce an injunction that [a] stay rendered unenforceable"); U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094-95 (9th Cir. 2010) ("If the preliminary injunction is dissolved, then a modification of that preliminary

The plaintiffs correctly assert, however, that the defendants did not make this argument in opposing the motion for a preliminary injunction. At that time, the defendants advanced the distinct argument that, even if the VA were not excluded from the FSLMRS's coverage, the District Court would not have jurisdiction over the plaintiffs' claims because the FSLMRS would channel those claims to a different enforcement regime.

The defendants attempt to recast their original, channeling-based argument as if it were no different from the inoperability-based argument that they now advance. But we are not persuaded, given the clear differences between the two arguments. And, insofar as the arguments are different, the defendants do not contend that the inoperability argument was separately advanced below.

It is a problem, therefore, that the defendants neither explain why the demanding standard of review that applies to a forfeited argument does not apply, see García-Navarro v. Universal Ins. Co., 173 F.4th 1, 7 (1st Cir. 2026) ("As we have repeatedly warned, arguments that were not raised below are forfeited and will only lead to reversal upon a showing of plain error."), nor explain how they likely meet that standard. Indeed, we note, the

---

injunction cannot stand, because it was entered in error."); Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 651 (9th Cir. 2021) (reversing a preliminary injunction and then "direct[ing] that all orders premised on it be vacated").

record shows that the defendants chose to keep the CBA in place, seemingly as if it remained binding on them, for months _after_ the President issued the EO, even though they were not subject during those months to any court order to do so.

It may be that there is some reason why it was more workable to keep the CBA in place as a binding agreement at that time than it is now.  But, if so, the defendants do not contend that the CBA has since become any more unworkable than it was when they chose to keep it in place during that period.

Thus, the defendants have not satisfied their burden as to the "likelihood of success" factor based on their lead argument for challenging the preliminary injunction.  See Rhode Island v. Trump, 155 F.4th 35, 43-45 (1st Cir. 2025).[2]

---

[2] To the extent that the defendants mean to reassert the jurisdictional argument based on the FSLMRS that they made below, they develop no argument as to how the District Court erred in rejecting it.  We also emphasize that, while the defendants in their stay motion raise a sovereign immunity challenge to a portion of the District Court's enforcement order, they do not do so as to the preliminary injunction.  And, we note, although sovereign immunity raises a subject matter jurisdiction question, there is a difference between considering "whether to stay an order's operation," and "whether to reverse the underlying order."  Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin., 172 F.4th 361, 367 n.4 (4th Cir. 2026).  Thus, while the defendants do appear to attempt to make such a sovereign immunity argument as to the preliminary injunction in their reply to the plaintiffs' opposition to the stay motion, "we do not consider arguments raised for the first time in a reply brief."  United States v. Casillas-Montero, 152 F.4th 306, 320 n.8 (1st Cir. 2025).  Moreover, the defendants failed to make this broader argument to the District Court in their stay motion.  We therefore decline to

2.

The defendants separately contend, as to the first Nken factor, that the District Court likely erred both in ruling that the CBA's termination was retaliatory and in ruling that it was arbitrary and capricious.  Notably, each of those rulings, if sound, in and of itself would support the preliminary injunction. Thus, because we conclude that the challenge concerning the District Court's retaliation ruling falls short, the defendants have not met their burden as to the "likelihood of success" factor.

To challenge the District Court's retaliation ruling, the defendants rely chiefly on the way that the Ninth Circuit in AFGE II interpreted a White House fact sheet related to the EO. See 167 F.4th at 1254-55.  As we have noted, the District Court relied on that fact sheet in ruling that the termination here was likely retaliatory.

The defendants do not argue, however, that the record fails to support the other bases for the District Court's retaliation determination -- including that (1) the defendants terminated the CBA, even though there was "explicit OPM guidance

---

consider that argument for that reason, too, "because Federal Rule of Appellate Procedure 8(a)(1)(A) ordinarily requires parties to move first for a stay in the district court before seeking relief in the court of appeals.  Allowing appellants in this court to rely on arguments that they did not make in their motion before the district court undermines that rule."  Rhode Island v. Trump, 155 F.4th 35, 46 (1st Cir. 2025).

that agencies should refrain from terminating any CBAs until [certain] litigation challenging the" underlying EO concluded and (2) the defendants exempted certain unions by name, rather than "subdivisions" of the agency.  In fact, the defendants do not grapple with those other bases.[3]  The defendants therefore do not explain why the District Court likely erred in treating the fact sheet, when considered along with the other evidence of retaliatory motive on which the District Court relied, as providing support for a finding that the defendants had a retaliatory motive.  The defendants also make no argument that the District Court's retaliation determination would lack sufficient factual support even if the fact sheet were disregarded.

In addition, we note that the defendants develop no argument that, even if the District Court's factual findings underlying its retaliation ruling are likely correct, the District Court likely erred as a matter of law in making that ruling.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  The defendants thus cannot meet their burden as to the first Nken factor based on

---

[3] The defendants do reference, in a single sentence contained in a footnote, the District Court's reliance on various VA officials' statements, but they do not even attempt to attack the other bases cited by the District Court.

their challenge to the District Court's retaliation ruling.  See
Nken, 556 U.S. at 434.

**B.**

Given the defendants' failure to meet their burden as to
the critical "likelihood of success" factor, we do not see how the
defendants' arguments as to the three remaining Nken factors
suffice to support their request to stay the preliminary
injunction.  Starting with the second Nken factor, we do not
dispute the defendants' contention that the CBA's reinstatement
will cause them additional financial expenses and result in VA
employees spending time on union-related matters rather than on VA
work.  Nor do we dispute their contention that these resulting
harms are irreparable.  We also may proceed on the understanding
that, as the defendants contend, because "the President[]
determin[ed] that collective bargaining by most VA employees is
inconsistent with national security -- an undisputed determination
meriting the utmost judicial respect," the preliminary injunction
causes them some irreparable harm by impeding national security.

The defendants go on to assert that the second Nken
factor merges with the fourth, because their asserted harms merge
with the public's interest.  See Nken, 556 U.S. at 435.  But, as
we have explained, the defendants have not shown that the
preliminary injunction likely was issued in error.  Accordingly,
we must separately account for the public's interest in the

CBA -- which is provided for and governed by federal law -- being kept in place as a binding agreement until lawfully terminated. See League of Women Voters v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (citation modified)).

Finally, as to the third Nken factor, which concerns injury to the plaintiffs, the defendants assert that the plaintiffs would not be substantially injured if a stay of the preliminary injunction were granted. The defendants reason that the plaintiffs' claimed loss of a right to a union representative during disciplinary proceedings and decreased parental leave are entitled to little weight. The defendants rely for this contention on AFGE II's determination that such harms "would likely be mitigated to a fair extent by reinstating the terminated agreements if the union plaintiffs were to prevail." 167 F.4th at 1259. But, even under the reasoning of that case, the plaintiffs' alleged injuries would be manifest during the period in which the CBA was not reinstated and so while the present appeal is pending.

Having considered all the Nken factors, we deny the defendants' request to stay the preliminary injunction. The defendants have not made the requisite "strong showing" in their stay motion that they are likely to succeed in challenging the preliminary injunction in their pending appeal. Nor have they

- 21 -

shown that staying that injunction in the interim would not cause substantial injury to the plaintiffs or the public.  See Ind. State Police Pension Tr. v. Chrysler LLC, 556 U.S. 960, 960-61 (2009) (per curiam) (noting that "[a] stay is not a matter of right, even if irreparable injury might otherwise result" and suggesting that "in a close case . . . balanc[ing] the equities" "may be appropriate" (citation modified)); Gun Owners of Am., Inc. v. Barr, No. 19-1298, 2019 WL 1395502, at *1-2 (6th Cir. Mar. 25, 2019) (denying a motion to stay a preliminary injunction pending appeal and reasoning that, while the movant may suffer irreparable harm in absence of the stay, the movant was unlikely to succeed on the merits of their appeal and "the public interest in safety support[ed] the denial of [the] stay").

**IV.**

We now turn to the portion of the defendants' motion that seeks to stay the District Court's order granting the plaintiffs' motion to enforce the preliminary injunction.  We emphasize two points up front.

First, in seeking to stay the enforcement order, the defendants take aim at two distinct aspects of it: (1) the portion that requires the defendants to "compl[y]" with the CBA, including by "process[ing]" the "currently pending grievances and arbitrations submitted under the . . . CBA"; and (2) the portion that rejected the defendants' new termination as unlawful.  Second,

- 22 -

the defendants appear to agree that, absent a stay of the preliminary injunction, they must make a strong showing both that they likely can appeal each of these aspects of the enforcement order on an interlocutory basis and that their interlocutory appeal of that aspect of that order is likely to succeed.  We follow the defendants' lead by starting with their arguments challenging the "compliance" portion of the enforcement order before then addressing their arguments challenging the other portion of that order.

## A.

As to the portion of the enforcement order that requires the defendants to "compl[y]" with the CBA, we once again begin with the "likelihood of success" factor.  See Nken, 556 U.S. at 434.  We then consider the other Nken factors.

## 1.

In the ordinary course, even though a preliminary injunction is subject to interlocutory appeal under 28 U.S.C. § 1292(a)(1), an order enforcing a preliminary injunction is not.  Rather, such an order may be appealed under that provision on an interlocutory basis only if it modifies the preliminary injunction.  See New York v. Trump, 171 F.4th 1, 29 (1st Cir. 2026); Hatten-Gonzales v. Hyde, 579 F.3d 1159, 1170-71 (10th Cir. 2009) (explaining that appellate courts lack § 1292(a)(1)

jurisdiction over orders that merely "enforce[]" preliminary injunctions).

The defendants do not directly address our appellate jurisdiction in their opening stay motion, even though they bear the burden to establish such jurisdiction. See In re Fin. Oversight & Mgmt. Bd. for P.R., 52 F.4th 465, 476-77 (1st Cir. 2022). We nonetheless understand them to be arguing that the "compliance" portion of the enforcement order did modify the preliminary injunction and so, for that reason, is itself subject to interlocutory appeal. See 28 U.S.C. § 1292(a)(1) (granting jurisdiction over district court orders that "modify[] . . . injunctions").

Specifically, the defendants argue that the "compliance" portion of the enforcement order "greatly expanded the [preliminary] injunction's scope" "by stating for the first time that the injunction encompassed 'compliance with the . . . CBA' in addition to 'reinstatement.'" They also note, seemingly in support of that same contention, that the enforcement order explicitly required compliance with specific duties under the CBA -- namely, that they "process[]" "the currently pending grievances and arbitrations submitted under the . . . CBA."

The defendants are right that the preliminary injunction contains no language that, on its face, refers to "compliance with the . . . CBA." It instead states the following: "The Defendants

- 24 -

shall reinstate the . . . CBA -- as well as any amendments, local supplemental agreements, and memoranda of understanding that were in place subsidiary to the . . . CBA -- for the remainder of the agreed-upon term provided in the . . . CBA."

The defendants are also right that the order clarifying the injunction does not mention "compliance" with the CBA.  It simply provides that "[t]o reinstate the . . . CBA means that all parties covered by [the CBA] will continue to be covered by [the CBA] until it is terminated or amended in a lawful manner."  And insofar as it refers to "compliance," it refers only to compliance with the preliminary injunction itself.

The defendants are right as well that, by contrast, the enforcement order states -- for the first time -- that "reinstatement of and compliance with the . . . CBA . . . shall be in both form and substance."  (First emphasis added.)  And they are right, too, that, in the enforcement order, the District Court expressly directed the defendants to "continue to . . . process[]" "the currently pending grievances and arbitrations submitted under the . . . CBA."

Against this backdrop, we take the defendants to be contending as follows.  The "compliance" portion of the enforcement order imposed a new requirement to comply with each and every term in the CBA, even while it has been reinstated, subject to "fac[ing] judicial contempt should [they] breach any obligation in the

agreement's 67 articles."  We emphasize that we do not understand the defendants, in pressing this argument, to be disputing that the preliminary injunction itself requires them to do more than simply "reinstate" the CBA in name only, such that, even though nominally "reinstate[d]," the CBA still would not constitute a binding agreement with which they would have to comply.  Indeed, the defendants' arguments about the irreparable harms that they contend that they will incur from reinstating the CBA are unintelligible if the "reinstate[ment]" requirements would oblige them to do no more than engage in a paper exercise of that meaningless sort.

Put otherwise, we understand the defendants to be arguing that the "compliance" portion of the "enforcement order greatly expand[s]" the preliminary injunction's scope -- and thereby modifies it -- in the specific sense that it makes each and every breach of the CBA itself a violation of the preliminary injunction, even after the CBA has been reinstated as a binding agreement.  And so, as the defendants see things, the "compliance" portion of the enforcement order subjects them for the first time to District Court-ordered specific performance as a remedy for any such breach, seemingly notwithstanding the distinct grievance procedures and related remedies contemplated under the CBA and

- 26 -

seemingly also including breaches of those CBA-specified procedures.[4]

It is not clear whether the District Court in fact understood the "compliance" portion of its enforcement order to have this consequence.  It is therefore important to explain our understanding of that portion of the enforcement order in relation to the defendants' argument in seeking to stay it.

As an initial matter, the defendants, as we have explained, at times appear to contend that the "compliance" portion of the enforcement order must be construed to permit (albeit impermissibly, in their view) the District Court to ignore the provisions of the CBA that provide procedures for remedying an alleged "breach" of the CBA's non-remedial terms.  The defendants appear to be contending, in other words, that this portion of the enforcement order empowers the District Court to directly order specific performance of each substantive CBA term whenever it determines that such a term has been violated.

---

[4] The FSLMRS provides that CBAs "shall provide procedures for the settlement of grievances," which include "claim[s] of breach" of a CBA.  5 U.S.C. §§ 7121(a)(1), 7103(a)(9)(C).  And subject to a few exceptions, those procedures "shall be the exclusive administrative procedures for resolving grievances which fall within its coverage."  Id. § 7121(a)(1).  The CBA here likewise notes that, with a few exceptions, "any complaint . . . concerning the interpretation or application" of the CBA must be made using an "exclusive procedure" that begins informally -- for example, with a letter written to a supervisor describing the problem -- and escalates in formality -- all the way through arbitration -- if the complaint is not resolved.

We cannot agree with this construction of the "compliance" portion of the enforcement order. The order's text does not require that construction, as "compliance" with an agreement's terms does not naturally entail the disregard of those terms that specify how violations of other terms must be addressed. Indeed, the enforcement order itself acknowledges that the CBA does set forth terms that specify such procedures and then expressly provides that the defendants must "process[]" "the currently pending grievances and arbitrations submitted under the . . . CBA."

We also understand the defendants to argue, however, that the "compliance" portion of the enforcement order separately expands the preliminary injunction in a more limited, but still important, way. Here, they argue that, even after the CBA has been reinstated, the order requires them to adhere (on pain of judicial contempt) to each of the procedures that the CBA specifies for addressing an asserted "breach" of one of its other terms in each and every instance in which there is an asserted breach of that term. That is, in requiring "compliance" with the terms of the CBA and further "order[ing]" that the defendants comply with a specific subset of the CBA's terms -- those that govern the "grievance[] and arbitration[]" procedures -- even after the CBA is reinstated, the defendants argue that the District Court has thereby expanded the preliminary injunction and so modified it.

Based on the difference between the terms used in the challenged portion of the enforcement order and those used in the preliminary injunction, we see no reason to reject this construction of the "compliance" portion of the enforcement order. We do recognize, of course, that there can be no breach of the CBA, once it has been terminated, until it is reinstated as a binding agreement. But that fact does not undermine the defendants' argument that the "compliance" portion of the enforcement order expanded -- and so modified -- the preliminary injunction in the way just described. The duty to "reinstate" the CBA as a binding agreement that has its own independent legal force that the preliminary injunction imposes, and the duty not to violate the reinstated CBA in any particular instance (even though that violation in that instance is only of one of the CBA's provisions specifying the procedure for addressing an asserted violation of one of the CBA's substantive terms), are distinct obligations.

The plaintiffs do dispute the defendants' contention that the "compliance" portion of the enforcement order greatly expanded the preliminary injunction's scope. As support, the plaintiffs assert that "[t]he parties and district court understood that [p]laintiffs were seeking substantive reinstatement of the . . . CBA, and that is what the court ordered in the [preliminary] injunction." The plaintiffs also point out

- 29 -

that, in the District Court's analysis of the equities and public interest in its opinion accompanying the preliminary injunction, it "acknowledge[d] that the changes resulting from the termination of the . . . CBA are significant and that reversing these changes will have associated costs of time and resources for the VA."  And they observe that, during the hearing on the preliminary injunction, counsel for the defendants said, "The government, if the CBA is reinstated, will have to give back . . . office space," "allow employees to engage in union activity during the workday," and "reengage in arbitrations."

These statements do not show, however, that the preliminary injunction itself made any individual instance of a breach of one of the CBA's terms providing for "grievance[] and arbitration[]" procedures itself a violation of that injunction. The statements show only that the "reinstate[ment]" requirement is one of substance that results in the re-establishment of a binding agreement and not a merely nominal "reinstate[ment]."  Thus, if by pointing to the statements that we have just recounted, the plaintiffs mean to argue that the enforcement order did not modify the preliminary injunction because the preliminary injunction itself empowered the District Court to order specific performance for each and every breach of the CBA's terms providing for "grievance[] and arbitration[]" procedures, even after the CBA has been reinstated as a binding agreement, then we cannot agree.

In sum, we conclude that the defendants have made a strong showing that, in requiring "compliance with the . . . CBA" and further in requiring the defendants to "process[]" "the currently pending grievances and arbitrations submitted under the . . . CBA," the enforcement order likely "substantially readjusts the legal relations of the parties." Morales Feliciano v. Rullan, 303 F.3d 1, 7 (1st Cir. 2002). And so, because that portion of the order likely modified the preliminary injunction in a manner contemplated by 28 U.S.C. § 1292(a)(1), it follows that if the defendants were to make a strong showing that they would likely succeed on the merits of their challenge to this portion of the enforcement order, then they would have made a strong showing that they would have satisfied the "likelihood of success" factor as to that portion.

## 2.

We turn, then, to the question of whether the defendants have made the requisite strong showing. We begin and end our analysis of that question with the defendants' contention that the District Court likely lacks jurisdiction to order specific performance in the expanded manner that we have just explained that the "compliance" portion of the enforcement order contemplates.

Ordinarily, the defendants argue, a collective bargaining agreement like the CBA is not so enforceable by a

district court.  It is instead enforceable only pursuant to the specific requirements set forth in the FSLMRS and the CBA's terms. So, the defendants contend, the District Court cannot claim such enforcement authority insofar as the District Court understands the FSLMRS to continue to govern the CBA after it is reinstated.

The defendants go on to contend that, insofar as the FSLMRS for some reason does not oust the District Court from directly enforcing the CBA in the manner that the "compliance" portion of the enforcement order contemplates, the Tucker Act and Little Tucker Act do.  The defendants base this last contention on their assertion that the federal government has waived its sovereign immunity only as to the payment of money damages in breach of contract cases and that "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989).  As such, the defendants argue, the Tucker Act and Little Tucker Act "create[] implied exceptions to the APA's waiver of sovereign immunity for actions seeking non-monetary relief."  (Citing 5 U.S.C. § 702.)

The District Court did not address its jurisdiction in issuing the enforcement order.  It simply issued that order.  The District Court therefore did not identify a basis for rejecting the jurisdictional challenge to the "compliance" portion of the enforcement order that the defendants now mount.

The plaintiffs, for their part, argue that the defendants waived their jurisdiction-based challenge by not raising it to the District Court in opposing the motion for the preliminary injunction. But, consistent with the terms of the preliminary injunction, the plaintiffs' motion requesting that injunction sought only to have the CBA reinstated. And, as we have explained, an order that requires the CBA's reinstatement would not itself entail that the District Court could police the enforcement of the agreement's terms in the manner that the enforcement order's "compliance" requirement contemplates. Thus, we do not fault the defendants for not having made this jurisdictional argument earlier, and, we note, they did advance this very same argument in their stay motion to the District Court. See Herbert v. Dickhaut, 695 F.3d 105, 109 (1st Cir. 2012) ("There can be no waiver where a party lacked an opportunity to raise an argument.").

The plaintiffs also argue that Coggeshall does not apply because their claims against the defendants are not contract-based but instead are rooted in the APA and the First Amendment. In support of this contention, they cite American Public Health Ass'n v. National Institutes of Health, 145 F.4th 39, 50 (1st Cir. 2025), and note that they are "neither seeking monetary relief nor asserting a narrow breach of the CBA." They also cite Puerto Rico v. United States, 490 F.3d 50, 57-58 (1st Cir. 2007), seemingly

- 33 -

for the proposition that the APA's waiver of sovereign immunity for nonmonetary relief extends to "any suit whether under the APA or not," including their First Amendment claim.

It is true that, unlike this case, Coggeshall concerned an action for mandamus to enforce a contract between a private entity and the federal government in which no allegation was made that the defendant officers had otherwise acted outside the scope of their statutory or constitutional authority.  See 884 F.2d at 2-4.  But the question here concerns whether, even after the CBA has been reinstated as a binding agreement pursuant to the preliminary injunction, the District Court may then modify that injunction as a means of enforcing it by ordering specific performance in each instance in which it finds that there has been a breach of one of the CBA's terms providing for "grievance[] and arbitration[]" procedures.  After all, such an individual breach would not in and of itself suffice to show that the CBA had not been reinstated as a binding agreement and need not itself result from the defendant having in that instance "acted outside their scope of authority."  Id. at 4.

Notably, neither American Public Health Ass'n nor Puerto Rico speaks to such a circumstance, as neither case concerned an order to enforce an injunction at all.  See American Public Health Ass'n, 145 F.4th at 47; Puerto Rico, 490 F.3d at 56-57.  Thus, at least on this record, and given the absence of an explanation by

- 34 -

the District Court of the basis of its authority to order such specific performance, we conclude that the defendants have satisfied their "strong showing" burden under Nken's first factor as to the "compliance" portion of the enforcement order.

The plaintiffs do have one final response.  They appear to argue that the District Court has not actually ordered specific performance of the entire CBA, such that any individual instance of non-compliance with its provisions is thereby a violation of the enforcement order.  Rather, the plaintiffs contend, the District Court in the enforcement order "simply ordered substantive compliance with the . . . CBA without addressing any narrow allegation of breach."  As such, they contend "[i]t is premature to predict that [d]efendants will breach specific terms of the . . . CBA and whether or how the [D]istrict [C]ourt will address such an event."

As we have explained, however, the "compliance" portion of the enforcement order modifies the preliminary injunction, which ordered "reinstate[ment]" of the CBA, in the way that we have described.  We therefore do not see how this last response by the plaintiffs undermines the showing as to the first Nken factor that the defendants have made.

**3.**

Having concluded that the defendants have met their burden as to the "likelihood of success" factor with respect to

the "compliance" portion of the enforcement order, we turn, then, to the final three stay factors so that we may assess how they bear on the defendants' request to stay that aspect of the enforcement order. By way of reminder, those three factors are: whether the defendants "will be irreparably injured absent a stay," whether "issuance of the stay will substantially injure the other parties interested in the proceeding," and whether issuance of the stay will be in "the public interest." Nken, 556 U.S. at 434 (citation omitted). We conclude that, after accounting for these three factors, the defendants are entitled to a stay of this portion of the enforcement order.

The defendants identify an irreparable harm that stems directly from the enforcement order's "compliance" directive: The District Court's "mandat[e], under threat of contempt" "is utterly foreign to any type of labor-relations or contract suit that Congress has authorized and represents a significant intrusion on the Executive Branch." (Citation omitted.) Given that the defendants have shown that they are likely to succeed on their challenge to the "compliance" portion of the enforcement order, we agree.

We recognize that we also must consider the possible harm to the plaintiffs from the requested stay. The defendants have shown, however, that they are likely to succeed on their challenge to the kind of district court-ordered specific

performance that is contemplated by the "compliance" portion of the enforcement order.  Thus, because the defendants have shown that they will suffer irreparable injury from being subject to the "compliance" directive and that the requested stay will not cause the plaintiffs to suffer additional injury that might flow from it, the calculus looks different as it relates to the enforcement order's "compliance" directive than it does as to the preliminary injunction itself.  See Trump v. CASA, Inc., 606 U.S. 831, 860-61 (2025) (granting the federal government's motion for a partial stay pending appeal and reasoning that the "[g]overnment is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the authority conferred by" statute and that the "balance of equities" weighed in favor of the government because the requested relief "will cause no harm to" the plaintiffs).  We therefore conclude that the defendants are entitled to a stay of the "compliance" portion of the enforcement order.

**B.**

There remains to address only the defendants' request to stay the other portion of the enforcement order.  In that portion, the District Court deemed the defendants' second termination of the CBA unlawful and therefore ineffective.  Again, we begin with the "likelihood of success" factor before addressing the other Nken factors.

- 37 -

**1.**

The defendants appear to view this portion of the enforcement order as being independently appealable on an interlocutory basis because it, too, "greatly expanded the injunction's scope." The defendants do not explain, though, how this portion of the order does so.

True, the defendants argue that the re-termination was "lawful" despite the District Court's contrary ruling. But the defendants focus chiefly on whether the reasons given for the re-termination reveal a retaliatory motive. They do not make a separate argument about why the District Court's handling of the re-termination of the CBA constituted, under 28 U.S.C. § 1292(a)(1), a modification of the preliminary injunction. And that failure is conspicuous when we consider that the defendants did develop such an argument as to the "compliance" portion of the enforcement order.

After all, the defendants do not argue that the order clarifying the preliminary injunction itself modified the preliminary injunction or that the clarification permitted unlawful terminations. Yet a mere disagreement about whether the re-termination was in fact lawful would appear to be just a disagreement about whether the defendants complied with the injunction as clarified. As a result, such a disagreement would

not itself reveal that the enforcement order expanded -- let alone greatly expanded -- the preliminary injunction.[5]

The defendants do argue that, under Federal Rule of Civil Procedure 65(d)(1), the District Court's "failure to explain the re-termination's perceived defect . . . warrants a stay."  But, to the extent that the defendants invoke Rule 65(d)(1) to argue that the District Court's failure to explain why the re-termination was unlawful somehow itself modified the preliminary injunction, they do not state this proposition clearly, let alone develop it.  See Zannino, 895 F.2d at 17.

We therefore conclude that the defendants have failed to meet their burden to show that this portion of the enforcement order "substantially readjusts the legal relations of the parties" and thereby modifies the injunction for purposes of 28 U.S.C. § 1292(a)(1).  Morales Feliciano, 303 F.3d at 7.  As a result, the defendants have not made a strong showing that they are likely to succeed in their pending appeal of this portion of the enforcement order.[6]

---

[5] With respect to whether the termination was "lawful," the plaintiffs asserted in their "response" to the defendants' status report (which noted that the defendants had re-terminated the CBA) that the "[d]efendants have no free-standing authority to terminate the [CBA] during its term."

[6] Although we have determined that the "compliance" portion of the enforcement order likely does modify the preliminary injunction, it is the defendants' burden to establish that appellate jurisdiction exists as to their interlocutory appeal of

**2.**

With respect to the three remaining <u>Nken</u> factors, the defendants appear to rely on the same arguments that they made as to the preliminary injunction.  We therefore conclude that those arguments, on balance, shake out in the same manner: The competing harms, in combination with the defendants' failure to make a strong showing that they are likely to succeed on their challenge of the re-termination,  counsels  against  granting  a  stay  of  the enforcement order's unlawfulness determination.  <u>See</u> <u>Gun Owners of America</u>, 2019 WL 1395502, at *1-2.

---

this distinct portion of that order.  <u>See</u> <u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>, 52 F.4th 465, 476-77 (1st Cir. 2022).  They do not argue, however, that it follows from 28 U.S.C. § 1292(a)(1) that because we have appellate jurisdiction on an interlocutory basis over part of the enforcement order, we have it over even those portions of the order that do not themselves modify the preliminary injunction.  Indeed, we have not previously so held, and there is contrary authority from at least one other circuit. <u>See</u> <u>Dominguez</u> v. <u>Better Mortg. Corp.</u>, 88 F.4th 782, 794 (9th Cir. 2023) (noting that "[j]ust because part of the order being timely appealed is reviewable" under 28 U.S.C. § 1292(a)(1) "does not mean that every issue addressed in the same order" is reviewable and further noting that different issues would need to "fit" into an "exception that would allow for review").  The defendants thus have not made a strong showing in that respect.  In addition, they have not separately made a showing based on the distinct theory of pendent appellate jurisdiction, <u>see</u> <u>Aleynikov</u> v. <u>Goldman Sachs Grp., Inc.</u>, 765 F.3d 350, 357 (3d Cir. 2014) (concluding the court had  jurisdiction  under  28  U.S.C.  § 1292(a)(1)  and  then considering,  upon  request  of  a  party,  the  appropriateness  of pendent appellate jurisdiction over different issues raised in a motion for summary judgment, which had been denied by the district court), as the defendants make no argument on that score either.

**V.**

For the foregoing reasons, we **grant** the motion for a stay pending appeal of the District Court's directive that the defendants "compl[y] with the . . . CBA, along with any 'amendments, local supplemental agreements, and memoranda of understanding related thereto' . . . in both form <u>and</u> substance," as well as its directive that the defendants "continue to . . . process[]" "the currently pending grievances and arbitrations submitted under the . . . CBA." We **deny** the defendants' stay motion with respect to the preliminary injunction. We also **deny** the defendants' stay motion with respect to their challenge to the District Court's unlawfulness determination in its enforcement order. Finally, we **deny** the defendants' accompanying motion for an administrative stay as moot.